King, J.,
delivered the opinion of the court.
In 1907, Harris, the appellee, was, and for a long time prior thereto had been, the owner of certain lands in Weld county in this state, upon which he was growing alfalfa and potatoes. Situated upon this land was a ditch running from the west to the east until it reached the southeast corner of section *297 3, at which point it turned abruptly to the north, terminating in the Empire ditch. The ditch had been built many years before and was owned and used by The Lower Latham Ditch Company to carry waste and surplus waters from the main ditch to the river, until the Empire ditch was built, after which it wasted into that ditch. This waste ditch was of varying depths, from two or three feet at the upper end to sis feet or more at the lower end, ■ including the cut in the ground and the bank above the surface, and in the upper reach it constituted a dike considerably above the level of plaintiff’s lands. In 1905 Saenger, the appellant, placed a dam in this waste ditch at the point where it turned to the north, but that dam washed out. In 1907 the dam was replaced and maintained, being about 12 or 14 feet wide and about 5 feet in height, raising the water in the waste ditch above the surface of the ground, but not as high as the ditch banks at that point. Plaintiff protested against the replacing of this dam, claiming it would cause an overflow upon his land. About the 12th of August the water overflowed the ditch banks, and continued to overflow thereafter, being greatest at a point from 80 to 110 rods west from the dam, and the water so overflowing is admitted to have destroyed a portion of plaintiff’s alfalfa and potato crop, and is shown to have permanently destroyed the stand of alfalfa. Plaintiff brought suit for damages in the sum of $850. The cause was tried to a jury which found a verdict in favor of plaintiff for $500, upon which judgment was entered. Plaintiff testified that prior to the placing of the dam, the ditch was clean to the hard ground; that when the overflow began, *298 he cut out a portion of the dam which allowed the water to run down and showed a deposit of sand three feet in depth at the- dam; that the sand was deposited in varying depths from that point up the ditch for a half mile. Another witness testified that he had known the ditch for a number of years and that it had never required cleaning for the reason that it had always kept itself clean; that it had fall enough to carry out the sand and had al: ways done so. The evidence showed that from the 12th day of August the ditch was so full of sand as to reduce its capacity to the extent that the. water overflowed in large quantities, at or near the upper end of plaintiff’s cultivated fields. Defendant made no effort to dispute the destruction of the crops by reason of the overflow, but denied his responsibility therefor, and introduced the testimony of an experienced and qualified civil engineer by which it appeared that the grade of the ditch at the lower end was such that a dam constructed of the height shown in the evidence would not raise the level of the water in the ditch so as to back the water itself up the ditch farther than 950 feet, at which point the level of the water in the bottom of the ditch would be the same as the top of the dam. From this testimony counsel for appellant strenuously insists and ably argues that it is conclusively shown that the backing of the water to the point of overflow was a physical impossibility. The engineer gave as his opinion that the effect of the dam could not possibly be to back the water above that point. He testified that the velocity of the water would be reduced to a point about 1500 feet west of the dam, but that, in his opinion, such dam would not cause the deposit *299 of sand in the ditch at the point where the overflow chiefly occurred. The case was submitted to the jury upon the theory and with instructions that plaintiff was entitled to recover in case the overflow was the result, either of the direct backing of the water, or the filling of the ditch with sand, provided the dam placed by appellant caused such backing of the water or filling of the ditch. It was in evidence that the water flowing into and through this ditch was heavily charged with sand. '
The case was tried upon the theory that the quantity of material a given stream can carry in suspension depends in part on the depth of the water and the velocity of the stream, being greater as the depth of the water and velocity of the stream is greater; that a stream as for instance, a ditch, will not scour its bed, or as the ranchmen witnesses herein characteristically say, “clean itself”, unless the velocity is sufficient to carry the silt in suspension — in other words, transport it; that if in one part of the ditch the velocity is great enough to carry the sand so held in suspension and in a subsequent part of the course the velocity is diminished, part of the material must be deposited; that this deposit will form a bank or obstruction in the ditch which may extend backward from the check indefinitely, following the shape of the channel, until the conduit is filled, or reduced in capacity from one end to the other, notwithstanding the grade. The opinion expressed by the witnesses for the plaintiff and the view adopted by the jury are not wholly untenable or opposed by any obvious physical impossibility under the testimony in the case. There was evidence from which the jury could and doubtless *300 did find that the dam complained of was the predominant cause of the deposit of sand in the ditch, and therefore, the proximate cause of the injury complained of.
Appellant contends that notwithstanding his acts in placing the dam in the ditch, plaintiff cannot recover because, being upon his land he had the right to remove the dam, and should have saved himself from damage by removing it and keeping the ditch clean. In view of the evidence that plaintiff protested against and at one time did cut out a portion of the dam, which appellant replaced, appellant cannot now be heard to say that appellee should have taken further steps to save himself from continued injury. Interference with irrigation works too often results in loss of life to justify a resort to that means, and resort to the civil courts, instead of the forcible removal of dams placed for irrigation purposes, is to be commended.
Exceptions were reserved to certain instructions of the court, which, by agreement of counsel in open court, were delivered orally instead of being submitted in writing; but as a whole, the instructions fairly state the law as applicable to this case. "We do not think the judgment should be reversed because the amount of damages awarded by the jury was less than demanded by the complaint and might have been awarded under the evidence. The judgment is affirmed.